## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

PINEY WOODS MOBILITY LLC,

        Plaintiff,

v.

        CASE NO. 7:26-cv-68

APPLE INC.,

        Defendant.

## |ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Piney Woods Mobility LLC ("Piney" or "Plaintiff"), for its Complaint against Defendant Apple Inc. ("Apple" or "Defendant"), alleges the following:

### THE PARTIES

1. Plaintiff is a limited liability company organized and existing under the laws of the state of Texas, with a principal address at 1400 W Southwest Loop 323, Suite 50 #2090, Tyler, TX 75701.

2. Upon information and belief, Defendant is a publicly traded corporation organized under the laws of the State of California, with its principal place of business at One Apple Park Way, Cupertino, CA 95014. Defendant may be served through its registered agent in the State of Texas at CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

### JURISDICTION AND VENUE

3. This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

4. Subject matter jurisdiction is based on 28 U.S.C. § 1338, in that this action arises under Federal statute, the patent laws of the United States (35 U.S.C. §§ 1, *et seq.*).

5. Defendant is subject to this Court's personal jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute.

6.      Personal jurisdiction exists generally over Defendant because Defendant has sufficient minimum contacts and/or has engaged in continuous and systematic activities in the forum because of business conducted within the State of Texas and the Western District of Texas.  Personal jurisdiction also exists over Defendant because it, directly or through subsidiaries, makes, uses, sells, offers for sale, imports, ships, distributes, advertises, makes available, and/or markets products within the State of Texas and the Western District of Texas that infringe one or more claims of the Patents-in-Suit.  Further, on information and belief, Defendant has placed or contributed to placing infringing products into the stream of commerce, both directly and through intermediaries (including distributors, retailers, authorized dealers, sales agents, and other individuals or entities), knowing or understanding that such products would be sold and used in the United States, including in this District.

7.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1400(b) and 1391(c)(2) because Defendant maintains physical brick-and-mortar business locations in the State of Texas and within this District, retains employees specifically in this District for the purpose of servicing customers in this District, and generates substantial revenues from its business activities in this District.  Such places of business include at least at 12545 Riata Vista Cir., Austin, Texas 78727 and 12801 Delcour Dr. Austin, Texas 78727.

8.      On information and belief, Apple has a substantial presence in the State of Texas and within this District, as exemplified by the LinkedIn Profile Page for Apple, which indicates there are 102 employees of Apple residing in the greater Austin area.  Further, Apple publicly acknowledges the fact that its Austin campus employs thousands of Texans in more than 1 million square feet of workspace (see *www.apple.com/newsroom/2025/08/*).

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    2



*See* Apple LinkedIn Profile Page, at [www.linkedin.com/company/apple/people/](www.linkedin.com/company/apple/people/).

9.       Still further, Apple maintains multiple physical business locations within this District, including but not limited to its Apple Stores located at the Domain in Austin, Barton Creek in Austin, North Star in San Antonio, and La Cantera in San Antonio.



*See* Google Maps.

10.      Defendant uses, sells, offers for sale, and/or imports the Accused Products in this District.

11.    Defendant has also committed acts of infringement in this district by commercializing, marketing, selling, distributing, and servicing the Accused Products.

## **PATENTS-IN-SUIT**

12.    Plaintiff is the sole and exclusive owner, by assignment, of United States Patent Nos.: (i) 8,712,441 (the '441 Patent); (ii) 9,031,581 (the '581 Patent); (iii) 9,185,522 (the '522 Patent); (iv) 9,253,616 (the '616 Patent);    (v) 9,615,204 (the '204 Patent); and (vi) 9,736,618 (the '618 Patent) (collectively, the Patents-in-Suit).

13.    By operation of law, the Patents-in-Suit were originally issued and exclusively vested to Mr. Richard Haney, as of their respective dates of issuance.  *See* 35 U.S.C. § 261; *Schwendimann v. Arkwright Advanced Coating, Inc.,* 959 F.3d 1065, 1072 (Fed. Cir. 2020); *Suppes v. Katti,* 710 Fed. Appx. 883, 887 (Fed. Cir. 2017); *Taylor v. Taylor Made Plastics, Inc.,* 565 Fed. Appx. 888, 889 (Fed. Cir. 2014). Thereafter, by way of written instruments, all rights, title, and interest in the Patents-in-Suit have been assigned to Plaintiff.  As such, Plaintiff has sole and exclusive standing to assert the Patents-in-Suit and to bring these causes of action.

14.    The Patents-in-Suit are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

15.    The Patents-in-Suit family of patents has been cited over 1,000 times by all of the well-known industry leaders, including multiple citations from industry giants Apple, Apple, Google, Microsoft, AT&T, T-Mobile, Verizon, Sprint, Virgin Mobile, Facebook, Amazon, Uber, Lyft, Lenovo, Motorola, Huawei, Boeing, Intel, Cisco, Sony, Dell, NEC, Siemens, Palm, Qualcomm, Blackberry, Mitac, Xerox, IBM, HTC, Fujitsu, Hitachi, Nextel, Garmin, Kyocera, Alcatel, Mapquest,  HERE Technologies, Toyota, Ford, GM, Square, Allstate, State Farm, American Express, Capital One, BOA, USAA and Avaya.

16.    The Patents-in-Suit each include numerous claims defining distinct inventions.  No single claim is representative (for purposes of infringement or validity) of any other. Even a cursory review of the claims of the Patents-in-Suit reveals numerous patentably distinct elements which preclude any single claims from being viewed as representative.

17.    The priority date of the Patents-in-Suit is at least as early as April 4, 2005. The Patents-in-Suit generally relate to two-way position information sharing technology.

18.    As of the priority dates, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.  Indeed, the Patents-in-Suit overcame several specific technological problems in the industry and provided specific technological solutions - and in particular, were **_foundational_** to the technology for two-way position information sharing. The teachings of the invention, however, do not require development of new cell phone or PDA technology nor do they require development of new cellular communication infrastructure. The functionality implemented by the software of the invention utilizes existing platforms and infrastructure. *See* '441 Patent at 1:28-29, 2:50-54 and Fig. 2A (below).



**Fig. 1 - Fig. 2A of '441 Patent**

19.    The claims of the Patents-in-Suit are patent eligible under 35 U.S.C. § 101, 102, 103, and 112, as reflected by the fact that three different Patent Examiners all agreed and allowed the Patents-in-Suit over extensive prior art as disclosed and of record during the prosecution of the Patents-in-Suit. *See Stone Basket Innov.,* 892 F.3d at 1179 ("when prior art is listed on the face of a patent, the examiner is presumed to have considered it") (citing *Shire LLC v. Amneal Pharm., LLC,* 802 F.3d 1301, 1307 (Fed. Cir. 2015)); *Exmark Mfg. v. Briggs & Stratton,* 879 F.3d 1332, 1342 (Fed. Cir. 2018).

20.    After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiners allowed all claims of the Patents-in-Suit to issue. In so doing, it is presumed that Examiners used their knowledge of the art when examining the claims. *See K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014). It is further presumed that Patent Examiners had experience in the field of the invention, and that the Patent Examiners properly acted in accordance with a person of ordinary skill. *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

21.    The claims of the Patents-in-Suit are novel and non-obvious, including over all non-cited art that is merely cumulative with the referenced and cited prior art. *See* 37 C.F.R. § 1.56(b) (information is material to patentability when it is not cumulative to information already of record in the application); *see also AbbVie Deutschland GmbH v. Janssen Biotech,* 759 F.3d 1258, 1304 (Fed. Cir. 2014); *In re DBC,* 545 F.3d 1373, 1382 (Fed. Cir. 2008). Likewise, the claims of the Patents-in-Suit are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by the Examiners. *See, e.g.,*

*St. Clair I.P. Consultants v. Canon, Inc.,* 2011 WL 66166 at \*6 (Fed. Cir. 2011); *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002); *In re Koninklijke Philips Patent Litigation,* 2020 WL 7392868 at \*19 (N.D. Cal. 2020); *Standard Oil v. American Cyanamid,* 774 F.2d 448, 454 (Fed. Cir. 1985) (persons of ordinary skill are presumed to be aware of all pertinent prior art).

22.    The Patents-in-Suit have been in full compliance with 35 U.S.C. § 287 through either (1) actual notice with affirmative communication of a specific charge of infringement by a specific accused product or device or (2) providing constructive notice—i.e., appropriately marking its products. *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) ("*Arctic Cat II*"). Alternatively, the notice provisions do not apply because the patents are directed to methods and/or the patentee has never made or sold a patented article. *Id.*

## THE ACCUSED PRODUCTS

23.    Upon information and belief, and as shown below, Defendant makes, sells, advertises, offers for sale, uses, or otherwise provides, at a minimum, hardware, firmware, and software applications, together with the systems and backend components, that enable communication with and among customer devices, which provide location determination, transmissions to Apple servers, server-side storage and processing, authorization and sharing controls, map display, and alert generation, covered by the Patents-in-Suit. These components include, but are not limited to, networks, servers, cloud-based infrastructure, and associated software, firmware, and applications operating over wireless and traditional communications networks used to implement and support the Apple AirTag, Find My and Precision Finding ecosystems. Exemplary, but not limiting, products, systems and methods equipped with and that use the Apple Find My ecosystem, include the Apple Find My app, Find My widget and the following:

- o    iPhone 16 / 16e / 16 Pro / 16 Pro Max / 16 Plus
- o    iPhone 15 / 15 Pro / 15 Pro Max / 15 Plus

- o iPhone 14 / 14 Pro / 14 Pro Max / 14 Plus
- o iPhone 13 / 13 Pro / 13 Pro Max / 13 mini
- o iPhone 12 / 12 Pro / 12 Pro Max / 12 mini
- o iPhone 11 / 11 Pro / 11 Pro Max
- o iPhone X / XS / XS Max / XR
- o iPhone SE (3rd gen, 2022)
- o iPhone SE (2nd gen, 2020)
- o iPhone 8 / 8 Plus; iPhone 7 / 7 Plus; iPhone 6s / 6s Plus
- o iPad Pro (M5) 11-inch & 13-inch
- o iPad Pro (M4) 11-inch & 13-inch
- o iPad Pro (6th gen, 2022) 11-inch & 12.9-inch
- o iPad Pro (5th gen, 2021) 11-inch & 12.9-inch
- o iPad Pro (4th gen, 2020) 12.9-inch
- o Apple Watch Series 6 (2020) — GPS and GPS + Cellular models
- o Apple Watch SE (1st generation) (2020) — GPS and GPS + Cellular
- o Apple Watch Series 7 (2021) — GPS and GPS + Cellular
- o Apple Watch Series 8 (2022) — GPS and GPS + Cellular
- o Apple Watch SE (2nd generation) (2022) — GPS and GPS + Cellular
- o Apple Watch Ultra (2022) — GPS + Cellular only
- o Apple Watch Series 9 (2023) — GPS and GPS + Cellular
- o Apple Watch Ultra 2 (2023) — GPS + Cellular
- o Apple Watch Series 10 (2024) — GPS and GPS + Cellular
- o Apple Watch Series 11 (2025) — GPS and GPS + Cellular
- o Apple Watch SE (3rd generation) (2025) — GPS and GPS + Cellular
- o Apple Watch Ultra 3 (2025) — GPS + Cellular
- o MacBook Air (M1, 2020) — and all later models (M2 2022, M3 2024, M4 2025, 13-inch & 15-inch variants)
- o MacBook Pro (13-inch M1, 2020) — and all later (14-inch & 16-inch M1 Pro/Max 2021, M2 series 2023, M3 series 2023–2024, M4/M5 series 2025+)
- o Mac mini (M1, 2020) — and all later (M2 2023, M4 2024+)
- o iMac (24-inch M1, 2021) — and all later (M3 2023, M4 2025+)
- o Mac Studio (M1 Max/Ultra, 2022) — and all later (M2 series 2023, M3/M4 series 2025+)
- o Mac Pro (M2 Ultra, 2023) — and later models (e.g., 2025+ updates)
- o AirPods Pro (1st generation) (2019 but widely used/supported in last 6 years) — U1 chip in case for precise tracking; speaker in case; full Find My network.
- o AirPods Max (2020) — Full Find My network support; play sound from headphones.
- o AirPods (3rd generation) (2021) — Full Find My network; offline location via network.
- o AirPods Pro (2nd generation) (2022 Lightning, 2023 USB-C refresh) — H2 chip; speaker in case; Precision Finding (with UWB on compatible iPhone); separate lost mode for each bud/case; full offline network.
- o AirPods (4th generation) (2024, standard non-ANC version) — Basic Find My; last known location; limited/no full offline network or case speaker.
- o AirPods 4 with Active Noise Cancellation (2024) — Full Find My network; speaker in charging case for sound; offline support.

- AirPods Pro (3rd generation) (2025) — Latest features; enhanced Find My with speaker/lanyard in case; full network/Precision Finding.
- AirTag (1st generation) (released April 30, 2021) — Model number A2187

24.     Collectively, all the foregoing, including all configurations and augmentations thereof, are referred to herein as the "Accused Products."



**Fig. 2 - Screenshot of Apple's informational website for the Apple AirTag, Find My and Precision Finding systems and methods offered, equipped and used with the Accused Products practicing the inventions of the Patents-in-Suit, available at https://www.apple.com/icloud/find-my/**



**Fig. 3 - Screenshot of Apple's informational website for the Apple AirTag, Find My and Precision Finding systems and methods offered, equipped and used with the Accused Products practicing the inventions of the Patents-in-Suit, available at https://www.apple.com/icloud/find-my/**

## COUNT I
### Infringement of U.S. Patent No. 8,712,441

25.     Plaintiff incorporates the above paragraphs by reference.

26.     Apple without authority, did and continues to make, use, sell, offer to sell, and/or import into the

United States the Accused Products as shown above.

27.  Apple thus has infringed at least claims 1, 3–6, 9–17, 20–24, and 27–33 of the '441 Patent literally and/or under the doctrine of equivalents.

28.  Further on information and belief, Apple directly uses the infringing Accused Products at least because it assembled the combined infringing elements and makes them collectively available in the United States, including its Internet domain web pages.  Further, and on information and belief, Apple has directly infringed by using the infringing Accused Products as part of its regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires Apple to make and use the Accused Products in an infringing manner.  Still further, Apple is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Products.

29.  As shown above in Figs. 2 and 3, Apple is making, using, and offering for sale the Accused Products.

30.  Additionally, upon information and belief, Apple owns, directs, and/or controls the infringing systems and method operation of the Accused Products.

31.  Apple has been on actual notice of the '441 Patent since at least as early as 2007. At that time and thereon, patents within the same patent family as the '441 Patent - including the '581 Patent being specifically disclosed during prosecution of one of Apple's patents - were repeatedly disclosed to the USPTO during the prosecution of Apple's own patent applications. The patent family of the '441 Patent indisputably encompasses the '441 Patent itself. *See Enovsys LLC v. T-Mobile USA, Inc.*, No. 2:21-CV-00368-JRG, 2022 WL 3686481, at *2 (E.D. Tex. Aug. 24, 2022). Moreover, the disclosure of these closely related family patents during Apple's own prosecution proceedings placed Apple on constructive and actual notice of the '441 Patent specifically, particularly as Apple would have conducted routine due diligence to assess prior art and freedom to operate. On

information and belief, Apple's standard due diligence practices for market freedom-to-operate clearance include monitoring and reviewing not only the patents directly cited during prosecution but also their related family members—whether previously filed, later filed, or subsequently issued. Accordingly, Apple's direct and indirect infringement of the '441 Patent has been undertaken with knowledge of the patent, rendering Apple liable for direct infringement, indirect infringement, and willful infringement.

*See* https://patents.google.com/patent/US8712441B2/en?oq=8%2c712%2c441#citedBy (reflecting the "Family to Family Citations" for the '441 Patent, which confirms the familial relationships underpinning this notice argument.)

32.   In the alternative, on information and belief, Apple has a policy or practice against investigating third party patent rights, and its willful blindness qualifies for requisite knowledge of the '441 Patent. *See Estech Sys. IP, LLC v. Carvana, LLC*, No. 2:21-CV-0482-JRG-RSP, 2022 WL 17727752, at *2 (E.D. Tex. Sept. 26, 2022) (noting such an allegation is sufficient "because it provides fair notice of the allegation and the grounds upon which it rests"). Thus, the infringement of the '441 Patent by Apple is willful.

33.   In addition or in the alternative, Apple, through its above described notice, indirectly infringed by way of inducing direct infringement by Apple's customers and/or contributing to the infringement by Apple's customers of the '441 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing Accused Products for use in systems that fall within the scope of the claims of the '441 Patent. This includes without limitation, one or more of the Accused Products by making, using, importing offering for sale, and/or selling such services,

Apple injured Plaintiff and is thus liable to Plaintiff for infringement of the '441 Patent under 35 U.S.C. § 271.

34. Apple, through its above-described notice, induced infringement under Title 35 U.S.C. § 271(b). Apple performed actions that induced infringement that Apple knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

35. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

36. Apple has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

37.　　As one non-limiting example, and as shown in Figs. 2 and 3 above, Apple, with knowledge that the Accused Products infringe, knowingly and intentionally induced direct infringement of the '441 Patent by providing instructions to its customers and end users how to use the Accused Products, including specifically how to "share your location with others." The customer and end user is provided with the functionality to share that user's location with others.

38.　　Apple has induced infringement by the customers and end users with the intent to cause infringement by them, in the alternative, with the belief that there is a high probability that they infringe the '441 Patent, but while willfully infringing and/or remaining willfully blind to the infringement.

39.　　The foregoing infringement on the part of Apple has caused injury to Plaintiff.  The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '441 Patent.

40.　　Each of Apple's aforesaid activities have been without authority and/or license from Plaintiff.

41.　　Plaintiff has been damaged because of the infringing conduct by Apple alleged above. Thus, Apple is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

42.　　Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

**COUNT II**
**Infringement of U.S. Patent No. 9,031,581**

43.　　Plaintiff incorporates the above paragraphs by reference.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

44.    Apple without authority, did and continues to make, use, sell, offer to sell, and/or import into the United States the Accused Products as shown above.

45.    Apple thus has infringed at least claims 7, 12, 21 and 22 of the '581 Patent literally and/or under the doctrine of equivalents.

46.    Further on information and belief, Apple directly uses the infringing Accused Products at least because it assembled the combined infringing elements and makes them collectively available in the United States, including its Internet domain web pages.  Further, and on information and belief, Apple has directly infringed by using the infringing Accused Products as part of its regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires Apple to make and use the Accused Products in an infringing manner.  Still further, Apple is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Products.

47.    As shown above in Figs. 2 and 3, Apple is making, using, and offering for sale the Accused Products.

48.    Additionally, upon information and belief, Apple owns, directs, and/or controls the infringing systems and method operation of the Accused Products.

49.    Apple has been on actual notice of the '581 Patent since at least as early as 2007. At that time and thereon, patents within the same patent family as the '581 Patent - including the '581 Patent being specifically disclosed during prosecution of one of Apple's patents - were repeatedly disclosed to the USPTO during the prosecution of Apple's own patent applications. The patent family of the '581 Patent indisputably encompasses the '581 Patent itself. *See Enovsys LLC v. T-Mobile USA, Inc.*, No. 2:21-CV-00368-JRG, 2022 WL 3686481, at *2 (E.D. Tex. Aug. 24, 2022). Moreover, the disclosure of these closely related family patents during Apple's own prosecution proceedings

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                15

placed Apple on constructive and actual notice of the '581 Patent specifically, particularly as Apple would have conducted routine due diligence to assess prior art and freedom to operate. On information and belief, Apple's standard due diligence practices for market freedom-to-operate clearance include monitoring and reviewing not only the patents directly cited during prosecution but also their related family members—whether previously filed, later filed, or subsequently issued. Accordingly, Apple's direct and indirect infringement of the '581 Patent has been undertaken with knowledge of the patent, rendering Apple liable for direct infringement, indirect infringement, and willful infringement.

*See* https://patents.google.com/patent/US9031581B1/en?oq=9%2c031%2c581#citedBy (reflecting the "Family to Family Citations" for the '581 Patent, which confirms the familial relationships underpinning this notice argument.)

50.    In the alternative, on information and belief, Apple has a policy or practice against investigating third party patent rights, and its willful blindness qualifies for requisite knowledge of the '581 Patent. *See Estech Sys. IP, LLC v. Carvana, LLC*, No. 2:21-CV-0482-JRG-RSP, 2022 WL 17727752, at *2 (E.D. Tex. Sept. 26, 2022) (noting such an allegation is sufficient "because it provides fair notice of the allegation and the grounds upon which it rests"). Thus, the infringement of the '581 Patent by Apple is willful.

51.    In addition or in the alternative, Apple, through its above described notice, indirectly infringed by way of inducing direct infringement by Apple's customers and/or contributing to the infringement by Apple's customers of the '581 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing Accused Products for use in systems that fall within the scope of the claims of the '581 Patent. This includes without limitation, one or more of the

Accused Products by making, using, importing offering for sale, and/or selling such services, Apple injured Plaintiff and is thus liable to Plaintiff for infringement of the '581 Patent under 35 U.S.C. § 271.

52.    Apple, through its above-described notice, induced infringement under Title 35 U.S.C. § 271(b). Apple performed actions that induced infringement that Apple knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

53.    Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

54.    Apple has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

55.  As one non-limiting example, and as shown in Figs. 2 and 3 above, Apple, with knowledge that the Accused Products infringe, knowingly and intentionally induced direct infringement of the '581 Patent by providing instructions to its customers and end users how to use the Accused Products, including specifically how to "share your location with others." The customer and end user is provided with the functionality to share that user's location with others.

56.  Apple has induced infringement by the customers and end users with the intent to cause infringement by them, in the alternative, with the belief that there is a high probability that they infringe the '581 Patent, but while willfully infringing and/or remaining willfully blind to the infringement.

57.  The foregoing infringement on the part of Apple has caused injury to Plaintiff. The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '581 Patent.

58.  Each of Apple's aforesaid activities have been without authority and/or license from Plaintiff.

59.  Plaintiff has been damaged because of the infringing conduct by Apple alleged above. Thus, Apple is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

60.  Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

**COUNT III**
**Infringement of U.S. Patent No. 9,185,522**

61.  Plaintiff incorporates the above paragraphs by reference.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                    18

62.     Apple without authority, did and continues to make, use, sell, offer to sell, and/or import into the United States the Accused Products as shown above.

63.     Apple thus has infringed at least claims 1, 10-12, 14-17, 20-21, 30-32, and 34-40 of the '522 Patent literally and/or under the doctrine of equivalents.

64.     Further on information and belief, Apple directly uses the infringing Accused Products at least because it assembled the combined infringing elements and makes them collectively available in the United States, including its Internet domain web pages.  Further, and on information and belief, Apple has directly infringed by using the infringing Accused Products as part of its regular testing and/or internal legal compliance activities.   Such testing and/or legal compliance necessarily requires Apple to make and use the Accused Products in an infringing manner.  Still further, Apple is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Products.

65.     As shown above in Figs. 2 and 3, Apple is making, using, and offering for sale the Accused Products.

66.     Additionally, upon information and belief, Apple owns, directs, and/or controls the infringing systems and method operation of the Accused Products.

67.     Apple has been on actual notice of the '522 Patent since at least as early as 2007. At that time and thereon, patents within the same patent family as the '522 Patent - including the '581 Patent being specifically disclosed during prosecution of one of Apple's patents - were repeatedly disclosed to the USPTO during the prosecution of Apple's own patent applications. The patent family of the '522 Patent indisputably encompasses the '522 Patent itself. *See Enovsys LLC v. T-Mobile USA, Inc.*, No. 2:21-CV-00368-JRG, 2022 WL 3686481, at *2 (E.D. Tex. Aug. 24, 2022). Moreover, the disclosure of these closely related family patents during Apple's own prosecution proceedings

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                                19

placed Apple on constructive and actual notice of the '522 Patent specifically, particularly as Apple would have conducted routine due diligence to assess prior art and freedom to operate. On information and belief, Apple's standard due diligence practices for market freedom-to-operate clearance include monitoring and reviewing not only the patents directly cited during prosecution but also their related family members—whether previously filed, later filed, or subsequently issued. Accordingly, Apple's direct and indirect infringement of the '522 Patent has been undertaken with knowledge of the patent, rendering Apple liable for direct infringement, indirect infringement, and willful infringement.

*See* https://patents.google.com/patent/US9185522B1/en?oq=9%2c185%2c522#citedBy

(reflecting the "Family to Family Citations" for the '522 Patent, which confirms the familial relationships underpinning this notice argument.)

68.     In the alternative, on information and belief, Apple has a policy or practice against investigating third party patent rights, and its willful blindness qualifies for requisite knowledge of the '522 Patent. *See Estech Sys. IP, LLC v. Carvana, LLC*, No. 2:21-CV-0482-JRG-RSP, 2022 WL 17727752, at *2 (E.D. Tex. Sept. 26, 2022) (noting such an allegation is sufficient "because it provides fair notice of the allegation and the grounds upon which it rests"). Thus, the infringement of the '522 Patent by Apple is willful.

69.     In addition or in the alternative, Apple, through its above described notice, indirectly infringed by way of inducing direct infringement by Apple's customers and/or contributing to the infringement by Apple's customers of the '522 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing Accused Products for use in systems that fall within the scope of the claims of the '522 Patent. This includes without limitation, one or more of the

Accused Products by making, using, importing offering for sale, and/or selling such services, Apple injured Plaintiff and is thus liable to Plaintiff for infringement of the '522 Patent under 35 U.S.C. § 271.

70.     Apple, through its above-described notice, induced infringement under Title 35 U.S.C. § 271(b). Apple performed actions that induced infringement that Apple knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

71.     Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

72.     Apple has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

73.    As one non-limiting example, and as shown in Figs. 2 and 3 above, Apple, with knowledge that the Accused Products infringe, knowingly and intentionally induced direct infringement of the '522 Patent by providing instructions to its customers and end users how to use the Accused Products, including specifically how to "share your location with others." The customer and end user is provided with the functionality to share that user's location with others.

74.    Apple has induced infringement by the customers and end users with the intent to cause infringement by them, in the alternative, with the belief that there is a high probability that they infringe the '522 Patent, but while willfully infringing and/or remaining willfully blind to the infringement.

75.    The foregoing infringement on the part of Apple has caused injury to Plaintiff. The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '522 Patent.

76.    Each of Apple's aforesaid activities have been without authority and/or license from Plaintiff.

77.    Plaintiff has been damaged because of the infringing conduct by Apple alleged above. Thus, Apple is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

78.    Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

**COUNT IV**
**Infringement of U.S. Patent No. 9,253,616**

79.    Plaintiff incorporates the above paragraphs by reference.

80.   Apple without authority, did and continues to make, use, sell, offer to sell, and/or import into the United States the Accused Products as shown above.

81.   Apple thus has infringed at least claims 1, 2, 9-10, 14-15, and 20-21 of the '616 Patent literally and/or under the doctrine of equivalents.

82.   Further on information and belief, Apple directly uses the infringing Accused Products at least because it assembled the combined infringing elements and makes them collectively available in the United States, including its Internet domain web pages.  Further, and on information and belief, Apple has directly infringed by using the infringing Accused Products as part of its regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires Apple to make and use the Accused Products in an infringing manner.  Still further, Apple is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Products.

83.   As shown above in Figs. 2 and 3, Apple is making, using, and offering for sale the Accused Products.

84.   Additionally, upon information and belief, Apple owns, directs, and/or controls the infringing systems and method operation of the Accused Products.

85.   Apple has been on actual notice of the '616 Patent since at least as early as 2007. At that time and thereon, patents within the same patent family as the '616 Patent - including the '581 Patent being specifically disclosed during prosecution of one of Apple's patents - were repeatedly disclosed to the USPTO during the prosecution of Apple's own patent applications. The patent family of the '616 Patent indisputably encompasses the '616 Patent itself. *See Enovsys LLC v. T-Mobile USA, Inc.*, No. 2:21-CV-00368-JRG, 2022 WL 3686481, at *2 (E.D. Tex. Aug. 24, 2022). Moreover, the disclosure of these closely related family patents during Apple's own prosecution proceedings

placed Apple on constructive and actual notice of the '616 Patent specifically, particularly as Apple would have conducted routine due diligence to assess prior art and freedom to operate. On information and belief, Apple's standard due diligence practices for market freedom-to-operate clearance include monitoring and reviewing not only the patents directly cited during prosecution but also their related family members—whether previously filed, later filed, or subsequently issued. Accordingly, Apple's direct and indirect infringement of the '616 Patent has been undertaken with knowledge of the patent, rendering Apple liable for direct infringement, indirect infringement, and willful infringement.

*See* https://patents.google.com/patent/US9253616B1/en?oq=9%2c253%2c616#citedBy (reflecting the "Family to Family Citations" for the '616 Patent, which confirms the familial relationships underpinning this notice argument.)

86.    Additionally, Apple has been on actual notice of the '616 Patent since at least as early as 2017 when the '616 Patent disclosed during prosecution of its own patent. Accordingly, Apple's direct and indirect infringement of the '616 Patent has been undertaken with knowledge of the patent, rendering Apple liable for direct infringement, indirect infringement, and willful infringement. *See* https://patents.google.com/patent/US9253616B1/en?oq=9%2c253%2c616#citedBy    (reflecting the "Cited By" for the '616 Patent, which confirms it was disclosed to Apple.)

87.    In the alternative, on information and belief, Apple has a policy or practice against investigating third party patent rights, and its willful blindness qualifies for requisite knowledge of the '616 Patent. *See Estech Sys. IP, LLC v. Carvana, LLC*, No. 2:21-CV-0482-JRG-RSP, 2022 WL 17727752, at *2 (E.D. Tex. Sept. 26, 2022) (noting such an allegation is sufficient "because it provides fair notice of the allegation and the grounds upon which it rests"). Thus, the infringement of the '616 Patent by Apple is willful.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    24

88.   In addition or in the alternative, Apple, through its above described notice, indirectly infringed by way of inducing direct infringement by Apple's customers and/or contributing to the infringement by Apple's customers of the '616 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing Accused Products for use in systems that fall within the scope of the claims of the '616 Patent. This includes without limitation, one or more of the Accused Products by making, using, importing offering for sale, and/or selling such services, Apple injured Plaintiff and is thus liable to Plaintiff for infringement of the '616 Patent under 35 U.S.C. § 271.

89.   Apple, through its above-described notice, induced infringement under Title 35 U.S.C. § 271(b). Apple performed actions that induced infringement that Apple knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

90.   Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

91.   Apple has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

92.   As one non-limiting example, and as shown in Figs. 2 and 3 above, Apple, with knowledge that the Accused Products infringe, knowingly and intentionally induced direct infringement of the '616 Patent by providing instructions to its customers and end users how to use the Accused Products, including specifically how to "share your location with others." The customer and end user is provided with the functionality to share that user's location with others.

93.   Apple has induced infringement by the customers and end users with the intent to cause infringement by them, in the alternative, with the belief that there is a high probability that they infringe the '616 Patent, but while willfully infringing and/or remaining willfully blind to the infringement.

94.   The foregoing infringement on the part of Apple has caused injury to Plaintiff.  The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '616 Patent.

95.   Each of Apple's aforesaid activities have been without authority and/or license from Plaintiff.

96.   Plaintiff has been damaged because of the infringing conduct by Apple alleged above. Thus, Apple is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by

law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

97.    Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## COUNT V
## Infringement of U.S. Patent No. 9,615,204

98.    Plaintiff incorporates the above paragraphs by reference.

99.    Apple without authority, did and continues to make, use, sell, offer to sell, and/or import into the United States the Accused Products as shown above.

100.    Apple thus has infringed at least claims 1, 2-4, 7-8, 10, 12-14, 17-18, 21-22 and 25 of the '204 Patent literally and/or under the doctrine of equivalents.

101.    Further on information and belief, Apple directly uses the infringing Accused Products at least because it assembled the combined infringing elements and makes them collectively available in the United States, including its Internet domain web pages.  Further, and on information and belief, Apple has directly infringed by using the infringing Accused Products as part of its regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires Apple to make and use the Accused Products in an infringing manner.  Still further, Apple is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Products.

102.    As shown above in Figs. 2 and 3, Apple is making, using, and offering for sale the Accused Products.

103.    Additionally, upon information and belief, Apple owns, directs, and/or controls the infringing systems and method operation of the Accused Products.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                           27

104.    Apple has been on actual notice of the '204 Patent since at least as early as 2007. At that time and thereon, patents within the same patent family as the '204 Patent - including the '581 Patent being specifically disclosed during prosecution of one of Apple's patents - were repeatedly disclosed to the USPTO during the prosecution of Apple's own patent applications.  The patent family of the '204 Patent indisputably encompasses the '204 Patent itself. *See Envosys LLC v. T-Mobile USA, Inc.*, No. 2:21-CV-00368-JRG, 2022 WL 3686481, at *2 (E.D. Tex. Aug. 24, 2022). Moreover, the disclosure of these closely related family patents during Apple's own prosecution proceedings placed Apple on constructive and actual notice of the '204 Patent specifically, particularly as Apple would have conducted routine due diligence to assess prior art and freedom to operate. On information and belief, Apple's standard due diligence practices for market freedom-to-operate clearance include monitoring and reviewing not only the patents directly cited during prosecution but also their related family members—whether previously filed, later filed, or subsequently issued. Accordingly, Apple's direct and indirect infringement of the '204 Patent has been undertaken with knowledge of the patent, rendering Apple liable for direct infringement, indirect infringement, and willful infringement.

*See* https://patents.google.com/patent/US9615204B1/en?oq=9%2c615%2c204#citedBy

(reflecting the "Family to Family Citations" for the '204 Patent, which confirms the familial relationships underpinning this notice argument.)

105.    In the alternative, on information and belief, Apple has a policy or practice against investigating third party patent rights, and its willful blindness qualifies for requisite knowledge of the '204 Patent. *See Estech Sys. IP, LLC v. Carvana, LLC*, No. 2:21-CV-0482-JRG-RSP, 2022 WL 17727752, at *2 (E.D. Tex. Sept. 26, 2022) (noting such an allegation is sufficient "because it

provides fair notice of the allegation and the grounds upon which it rests"). Thus, the infringement of the '204 Patent by Apple is willful.

106.    In addition or in the alternative, Apple, through its above described notice, indirectly infringed by way of inducing direct infringement by Apple's customers and/or contributing to the infringement by Apple's customers of the '204 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing Accused Products for use in systems that fall within the scope of the claims of the '204 Patent. This includes without limitation, one or more of the Accused Products by making, using, importing offering for sale, and/or selling such services, Apple injured Plaintiff and is thus liable to Plaintiff for infringement of the '204 Patent under 35 U.S.C. § 271.

107.    Apple, through its above-described notice, induced infringement under Title 35 U.S.C. § 271(b). Apple performed actions that induced infringement that Apple knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313, (Fed. Cir. 2007).

108.    Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

(Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

109.   Apple has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

110.   As one non-limiting example, and as shown in Figs. 2 and 3 above, Apple, with knowledge that the Accused Products infringe, knowingly and intentionally induced direct infringement of the '204 Patent by providing instructions to its customers and end users how to use the Accused Products, including specifically how to "share your location with others." The customer and end user is provided with the functionality to share that user's location with others.

111.   Apple has induced infringement by the customers and end users with the intent to cause infringement by them, in the alternative, with the belief that there is a high probability that they infringe the '204 Patent, but while willfully infringing and/or remaining willfully blind to the infringement.

112.   The foregoing infringement on the part of Apple has caused injury to Plaintiff. The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '204 Patent.

113.   Each of Apple's aforesaid activities have been without authority and/or license from Plaintiff.

114.   Plaintiff has been damaged because of the infringing conduct by Apple alleged above. Thus, Apple is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

115.   Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

**COUNT VI**
**Infringement of U.S. Patent No. 9,736,618**

116.   Plaintiff incorporates the above paragraphs by reference.

117.   Apple without authority, did and continues to make, use, sell, offer to sell, and/or import into the United States the Accused Products as shown above.

118.   Apple thus has infringed at least claims 1-8, 10, 12-16, 18-26, 28-29, and 31-36 of the '618 Patent literally and/or under the doctrine of equivalents.

119.   Further on information and belief, Apple directly uses the infringing Accused Products at least because it assembled the combined infringing elements and makes them collectively available in the United States, including its Internet domain web pages.  Further, and on information and belief, Apple has directly infringed by using the infringing Accused Products as part of its regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires Apple to make and use the Accused Products in an infringing manner.  Still further, Apple is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Products.

120.   As shown above in Figs. 2 and 3, Apple is making, using, and offering for sale the Accused Products.

121.    Additionally, upon information and belief, Apple owns, directs, and/or controls the infringing systems and method operation of the Accused Products.

122.    Apple has been on actual notice of the '618 Patent since at least as early as 2007. At that time and thereon, patents within the same patent family as the '618 Patent - including the '581 Patent being specifically disclosed during prosecution of one of Apple's patents - were repeatedly disclosed to the USPTO during the prosecution of Apple's own patent applications. The patent family of the '618 Patent indisputably encompasses the '618 Patent itself. *See Enovsys LLC v. T-Mobile USA, Inc.*, No. 2:21-CV-00368-JRG, 2022 WL 3686481, at *2 (E.D. Tex. Aug. 24, 2022). Moreover, the disclosure of these closely related family patents during Apple's own prosecution proceedings placed Apple on constructive and actual notice of the '618 Patent specifically, particularly as Apple would have conducted routine due diligence to assess prior art and freedom to operate. On information and belief, Apple's standard due diligence practices for market freedom-to-operate clearance include monitoring and reviewing not only the patents directly cited during prosecution but also their related family members—whether previously filed, later filed, or subsequently issued. Accordingly, Apple's direct and indirect infringement of the '618 Patent has been undertaken with knowledge of the patent, rendering Apple liable for direct infringement, indirect infringement, and willful infringement.

*See* https://patents.google.com/patent/US9736618B1/en?oq=9%2c736%2c618#citedBy (reflecting the "Family to Family Citations" for the '618 Patent, which confirms the familial relationships underpinning this notice argument.)

123.    In the alternative, on information and belief, Apple has a policy or practice against investigating third party patent rights, and its willful blindness qualifies for requisite knowledge of the '618 Patent. *See Estech Sys. IP, LLC v. Carvana, LLC*, No. 2:21-CV-0482-JRG-RSP, 2022 WL

17727752, at *2 (E.D. Tex. Sept. 26, 2022) (noting such an allegation is sufficient "because it provides fair notice of the allegation and the grounds upon which it rests"). Thus, the infringement of the '618 Patent by Apple is willful.

124. In addition or in the alternative, Apple, through its above described notice, indirectly infringed by way of inducing direct infringement by Apple's customers and/or contributing to the infringement by Apple's customers of the '618 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing Accused Products for use in systems that fall within the scope of the claims of the '618 Patent. This includes without limitation, one or more of the Accused Products by making, using, importing offering for sale, and/or selling such services, Apple injured Plaintiff and is thus liable to Plaintiff for infringement of the '618 Patent under 35 U.S.C. § 271.

125. Apple, through its above-described notice, induced infringement under Title 35 U.S.C. § 271(b). Apple performed actions that induced infringement that Apple knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313, (Fed. Cir. 2007).

126. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668

(Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

127.   Apple has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

128.   As one non-limiting example, and as shown in Figs. 2 and 3 above, Apple, with knowledge that the Accused Products infringe, knowingly and intentionally induced direct infringement of the '618 Patent by providing instructions to its customers and end users how to use the Accused Products, including specifically how to "share your location with others." The customer and end user is provided with the functionality to share that user's location with others.

129.   Apple has induced infringement by the customers and end users with the intent to cause infringement by them, in the alternative, with the belief that there is a high probability that they infringe the '618 Patent, but while willfully infringing and/or remaining willfully blind to the infringement.

130.   The foregoing infringement on the part of Apple has caused injury to Plaintiff.  The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '618 Patent.

131.   Each of Apple's aforesaid activities have been without authority and/or license from Plaintiff.

132.    Plaintiff has been damaged because of the infringing conduct by Apple alleged above. Thus, Apple is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

133.    Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Apple as follows:

1.    Declaring that Apple has infringed the Patents-in-Suit;

2.    Awarding Plaintiff its damages suffered because of Apple's infringement of the Patents-in-Suit;

3.    Enter a judgment awarding treble damages pursuant to 35 U.S.C. §284 for Apple's willful infringement of the Patents-in-Suit;

4.    Awarding Plaintiff its costs, reasonable attorneys' fees, expenses, and interest;

5.    Granting Plaintiff such further relief as the Court finds appropriate.

## JURY DEMAND

Plaintiff demands trial by jury, under Fed. R. Civ. P. 38.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Respectfully Submitted

*/s/ Christopher A. Honea*

M. Scott Fuller
   Texas Bar No. 24036607
   sfuller@ghiplaw.com
Randall Garteiser
   Texas Bar No. 24038912
   rgarteiser@ghiplaw.com
Christopher A. Honea
   Texas Bar No. 24059967
   chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 405-3999

**ATTORNEYS FOR PLAINTIFF**